[No. F016831. Fifth Dist. Aug. 10, 1993.]

RUSSELL COON, Plaintiff and Respondent, v.
GEORGE A. NICOLA, JR., Defendant and Appellant.

COUNSEL

Bonne, Jones, Bridges, Muller & O'Keefe, Peter A. Schneider, Schmid & Norek, Gordon T. Ownby and Susan H. Schmid for Defendant and Appellant.

R. Rex Parris and Michael R. Smith for Plaintiff and Respondent.

OPINION

**ARDAIZ, Acting P. J.**—The instant case is an appeal from an order denying a petition to compel arbitration of a medical malpractice claim.

Plaintiff Russell Coon (respondent herein) filed a complaint in Kern County Superior Court against defendant (appellant herein) George Nicola, Jr., M.D. Appellant treated respondent on or about April 4, 1990, for injuries sustained by respondent in a fall down a mine shaft several days earlier on March 31, 1990.

Respondent eventually brought an action against Ridgecrest Community Hospital, R.C.W. Jones, Jr., M.D., H.W. Green, M.D. and George Nicola, Jr., M.D. alleging negligently rendered medical care to respondent beginning on or about March 31, 1990. Subsequent to being served with the complaint, appellant filed and served his answer which consisted of a general denial and several affirmative defenses. The fourth affirmative defense asserted the right to have the negligence claim decided pursuant to a written agreement requiring that resolution of the issues raised in respondent's complaint be determined in a binding arbitration proceeding.

Appellant requested that respondent stipulate to a stay of the proceedings and to submission of their dispute to arbitration according to the terms of the agreement. Respondent refused to so stipulate, and appellant filed and served a petition to compel arbitration.

The petition was heard on August 21, 1991, in the Superior Court of Kern County. The trial court denied the petition from which order appellant appeals.

The issues before us are: (1) does California Code of Civil Procedure section 1295,[1] addressing arbitration agreements in medical malpractice actions, preclude retroactive arbitration agreements; (2) may parties contract to submit precontract claims to arbitration; (3) are such pre-agreement arbitration agreements afforded the legislative conclusion of section 1295, subdivision (e); (4) is the retroactive agreement in the present case a contract of adhesion; and (5) was respondent's signing of the arbitration agreement invalid as a contract of adhesion because he claims he was affected by analgesic drugs which had been prescribed for pain.

FACTS

After initial treatment of respondent at Ridgecrest Community Hospital for his injuries, appellant performed surgery on respondent for a fractured wrist. Postsurgical radiographs were taken which indicated a previously undiagnosed "middle shaft radius fracture" of respondent's left arm. Appellant told respondent of the missed diagnosis following surgery, but also told respondent it was "going to be alright [*sic*]."

---

[1] All references are to the Code of Civil Procedure unless otherwise indicated.

On a subsequent visit to appellant's office the following week, respondent signed a physician-patient arbitration agreement covering appellant's care of respondent. The agreement provided that claims regarding prospective care were to be covered by an arbitration agreement but also included a provision concerning pre-agreement treatment: "Article 6: Retroactive Effect: If patient intends this agreement to cover services rendered before the date it is signed (for example, emergency treatment) patient should initial below: Effective as of date of first medical services."

It is not disputed that respondent signed the agreement and separately initialed the clause expressly agreeing to arbitrate disputes stemming from the care appellant rendered prior to the office visit. Subsequent to the signing of the arbitration agreement, respondent continued treatment with appellant.

## DISCUSSION

In the argument before the superior court, respondent maintained the statutory authority for physician-patient arbitration agreements does not authorize enforcement of retroactive agreements and that appellant's attempt to enforce the agreement was unconscionable. Counsel for respondent submitted his client's declaration concerning the signing of the arbitration agreement: "As I said, I was discharged from the hospital on or about April 5. About a week later I returned for a follow-up visit to see Dr. Nicola at his office. I have viewed Petitioner's Exhibit 'A'. I have absolutely no memory of discussing that particular 'agreement' or of signing it, although I do remember that nurses would often bring me several papers at once to sign on a clip-board. The nurse would lift up each page and I would sign where she told me to sign. It was my understanding that I was just signing insurance papers and so I did what they told me to do. If I had known that one of those 'papers' was going to take away my legal rights, I would not have signed it."

Counsel for appellant argued that section 1295 did not preclude retroactive arbitration agreements and that the retroactive provision was not a contract of adhesion.

The superior court ruled in an order after hearing of petition to compel arbitration:

"The court finds that the provision in the medical arbitration agreement sought to be enforced by Defendant, GEORGE A. NICOLA, calls for a retroactive application of the agreement's waiver of jury trial rights. The court finds that the *Code of Civil Procedure*, § 1295 does not authorize or mandate

the language found in Article 6 of the medical arbitration agreement here involved. The court further finds that under subsections (a), (c), and (e) of § 1295, the medical arbitration agreement at issue here is, therefore, not insulated from attack as being a contract of adhesion or as being an unconscionable contract to the extent it seeks to govern the rights of the parties retroactively from the date on which it was purportedly signed by plaintiff. The court further finds that the declaration of plaintiff and respondent, RUSSELL COON, submitted with the opposing papers shows that respondent was in a heavily medicated state at the time the alleged agreement was purportedly signed.

"The court further finds that the relative bargaining position of the parties at the time the purported agreement was entered into was grossly unequal. The court further finds that this inequality was attributable to the plaintiff's medicated state.

"On the basis of the findings recited above, the court enters the following order:

"That petitioner, GEORGE A. NICOLA's, petition to compel arbitration and motion to remove case from civil active list be denied."

*This Court Finds That Code of Civil Procedure Section 1295 Does Not Preclude Retroactive Arbitration Agreements*

Section 1295, states:

"(a) Any contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract and shall be expressed in the following language: 'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.

"(b) Immediately before the signature line provided for the individual contracting for the medical services must appear the following in at least 10-point bold red type:

"NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE I OF THIS CONTRACT.'

"(c) Once signed, such a contract governs all subsequent open-book account transactions for medical services for which the contract was signed until or unless rescinded by written notice within 30 days of signature."

The provisions of section 1295 were incorporated into the instant contract.

■ Respondent claims on appeal that the wording in section 1295, subdivision (c) referring to *subsequent* transactions clearly precludes any authorization of a retroactive application of an arbitration agreement. Section 1295 states that all medical malpractice arbitration agreements must include specific provisions such as the specific wording in subdivision (a), the 10-point bold red type provision in subdivision (b), and the ability to rescind the contract by written notice within 30 days of signing the agreement as required by subdivision (c). However, nothing in the wording of the statute states that medical malpractice arbitration agreements may not also include additional provisions. In fact the wording of subdivision (a) is indicative of this when it requires mandatory language to be set forth in the *"first article* of the contract." The implication here is that other articles may be added depending upon the needs of the parties. There is also no specification in section 1295 as to what particular method of arbitration is to be used, but rather, according to section 1281.6, if a method of appointing an arbitrator is specified in the agreement, such method shall be used. If not specified, the parties may agree, or if they cannot agree, the court shall appoint the arbitrator. Such freedom in the wording of the statute itself indicates that additional provisions in a medical malpractice arbitration agreement are allowed.

In addition, the courts have consistently found a strong public policy favoring arbitration agreements. In *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 707 [131 Cal.Rptr. 882, 552 P.2d 1178], the court found that the transformation of legislative and judicial attitudes toward arbitration has encouraged a dramatic development in its use, as arbitration is expeditious, less costly, and lessens court congestion.

We find nothing in the statute which, by its terms, expressly or implicitly precludes a retroactive arbitration agreement.

## Parties May Contract to Submit Pre-contract Claims to Arbitration

The question then becomes whether parties may contract to submit pre-contract claims to arbitration. Section 1281 states: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." "Controversy" as defined in section 1280, subdivision (c), "means any question[ ] arising between parties to an agreement whether such question is one of law or of fact or both."

We conclude section 1281 et seq. applies to medical malpractice arbitration agreements to the extent they do not conflict with the specific provisions of section 1295. In *Rosenfield* v. *Superior Court* (1983) 143 Cal.App.3d 198 [191 Cal.Rptr. 611], the court determined that the requirements of section 1295 concerning waiver of the patient's right to jury trial were mandatory: "section 1295 is mandatory and preempts the general provisions of section 1281.2 in the area of medical malpractice arbitration agreements." (143 Cal.App.3d at p. 200.) Section 1281.2 provides in pertinent part that a court shall order arbitration if it "determines that an agreement to arbitrate the controversy exists, unless it determines that: . . . (b) Grounds exist for the revocation of the agreement." The court in *Rosenfield* stated, "To conclude that section 1281.2 takes precedence over section 1295, setting aside an arbitration agreement only if grounds exist for revocation of that agreement, would be plainly inconsistent with the Legislature's intent expressed in section 1295." (143 Cal.App.3d at p. 202.) It would follow that as long as the provisions of section 1295 are met as to a medical malpractice arbitration agreement, parties may legally agree to arbitrate pre-agreement claims subject to the same grounds for revocation as exist for any contract, as stated in section 1281 et seq.

## The Pre-agreement Arbitration Claim Is Not Afforded the Legislative Conclusion of Section 1295, Subdivision (e)

Appellant claims the pre-agreement arbitration claim is subject to the legislative conclusion of section 1295, subdivision (e), which states: "Such a contract is not a contract of adhesion, nor unconscionable nor otherwise improper, where it complies with subdivisions (a), (b) and (c) of this section." The terminology above as to "such a contract" refers only to the agreement between the parties to arbitrate disputes arising out of services rendered as provided for in section 1295. If certain language is followed as specified in 1295, subdivisions (a), (b), and (c), the agreement to arbitrate is exempted from attack as a contract of adhesion.

Such language would not, however, shield the agreement from attack on the validity of consent. In *Ramirez* v. *Superior Court* (1980) 103 Cal.App.3d

746 [103 Cal.App.3d 746, 163 Cal.Rptr. 223], the court stated: "In light of the constitutional protection for the right to jury trial in civil cases, we conclude that the Legislature may not establish a conclusive presumption that one signing an agreement meeting the requirements of section 1295 has in fact consented to arbitration." (*Id.* at p. 756.) The court did hold that a party could show he or she was coerced into signing or did not read the waiver notices provided and did not realize that the agreement was an agreement to arbitrate. (*Ibid.*) This, the court conjectured, would be a difficult task, as the individual would need to explain how the 10-point red type was overlooked, why questions were not asked, or why the agreement was not rescinded within the 30-day period after signing the agreement. (*Id.* at pp. 756-757.)

However, since retroactivity of an agreement is not addressed by the working of section 1295, it follows that the legislative conclusion of section 1295, subdivision (e) is inapplicable to the contract provisions at issue here. As such, a retroactive agreement is subject to revocation on grounds that exist for revocation of any contract and such a provision *could* be found to be a contract of adhesion dependent on the circumstances.

### The Present Agreement Is Not a Contract of Adhesion

The present agreement is, however, not a contract of adhesion. "Contract of adhesion" is a term which "signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." (*Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].) However, a determination that a contract may be of such a nature is, "merely the beginning and not the end of the analysis insofar as enforceability of its terms is concerned. Enforceability depends upon whether the terms of which the adherent was unaware are beyond the reasonable expectations of an ordinary person or are oppressive or unconscionable." (*Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 357 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].)

In *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 820 [171 Cal.Rptr. 604, 623 P.2d 165], a nonmedical arbitration case, the court stated that "a contract or provision which does not fall within the reasonable expectations of the weaker or 'adhering' party will not be enforced against him." In addition, a contract provision, "even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or unconscionable." (*Id.* at p. 820.)

Even assuming that some may see the patient/physician relationship by its very nature as being unequal, in order to be considered a contract of

adhesion, the consideration is whether the terms of which adherent was unaware are beyond the reasonable expectations of the ordinary person or are oppressive or unconscionable. (*Wheeler, supra,* 63 Cal.App.3d at p. 357.)

■ Although the definition of "unconscionable" has not been precise, " '[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party'. . . . Phrased another way, unconscionability has both a 'procedural' and a 'substantive' element. . . ." (*A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 485-486 [186 Cal.Rptr. 114], internal citations omitted.)

In *Chretian* v. *Donald L. Bren Co.* (1984) 151 Cal.App.3d 385 [198 Cal.Rptr. 523], a real estate salesman brought suit against his former employer, seeking unpaid commissions and alleging the employment agreement between them was unconscionable. Within the procedural element of unconscionability the court looked at whether Chretian was required to accept the contract or reject it, whether he had bargaining power sufficient to negotiate its terms, and whether he read and understood the contract, negating a possibility of surprise. (*Id.* at p. 389.) The court found that the substantive element must be evaluated at the time the contract was formed, "Because an actual agreement between the parties will be denied enforcement only where the negotiated terms are substantively unreasonable." (*Ibid.*) Here the court looked to see if the allocation of risk was suspect, but stated, " '. . . not all unreasonable risk allocations are unconscionable; rather, enforceability of the clause is tied to the procedural aspects of unconscionability [citation] such that the greater the unfair surprise or inequality of bargaining power, the less unreasonable the risk allocation which will be tolerated. [Citation.]' " (*Ibid.*)

Although the appellant in the present case drafted the arbitration form, standardized forms such as life or accident insurance forms or leases, are common and accepted in modern daily life. (*Neal, supra,* 188 Cal.App.2d at p. 694.) ■ A standardized form in itself does not render a contract to be a contract of adhesion. "[I]n determining whether an individual contract may be classified as a contract of adhesion, the seminal test is whether the stronger party has disappointed the reasonable expectations of the other party." (*Yeng Sue Chow* v. *Levi Strauss & Co.* (1975) 49 Cal.App.3d 315, 325 [122 Cal.Rptr. 816].)

■ In essence, in determining whether a contract is unconscionable or includes terms beyond the reasonable expectations of the ordinary person involves an analysis of many of the factors to be discussed below. We would

need to consider whether there was no opportunity to question the terms of the agreement (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862 [27 Cal.Rptr. 172, 377 P.2d 284]), that there were hidden or ambiguous terms in the agreement (*Spence* v. *Omnibus Industries* (1975) 44 Cal.App.3d 970 [119 Cal.Rptr. 171]), that the adherent would need to sign the agreement or forego necessary treatment (*Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]), that the liability of one party was greatly limited (*Tunkl, supra,* 60 Cal.2d at p. 92), or that the arbitration process itself was unequal (*Graham, supra,* 28 Cal.3d at p. 807). We find none of these factors present in this case. Each factor will be examined in turn.

*Madden, supra,* 17 Cal.3d at page 711, describes a characteristic adhesion contract as one in which ". . . the stronger party drafts the contract, and the weaker has no opportunity, either personally or through an agent, to negotiate concerning its terms." In *Steven* v. *Fidelity & Casualty Co., supra,* 58 Cal.2d 862, the court found an inequality or disparity in bargaining power where the insured bought life insurance simultaneously with his airline ticket from a vending machine. The policy stated that it was not for travel on other than scheduled air carriers. The insured's flight was canceled and the airline agent found the only available alternative flight for the insured was on another airline. The insured was killed when the flight crashed and the insurance company refused to pay. The court stated, "The disparity in bargaining power between the insured and the insurer here is so tremendous that the insurer had adopted a means of selling policies which makes bargaining totally impossible. The purchaser lacks any opportunity to clarify ambiguous terms or to discover inconspicuous or canceled ones." (*Id.* at p. 883.) In the present case there is no indication that respondent could not have questioned appellant as to the meaning of the contract.

The court did find a contract of adhesion in *Spence* v. *Omnibus Industries, supra,* 44 Cal.App.3d 970, where over 2,000 words were jammed into a tightly printed jumble of terms and conditions including an arbitration clause on the reverse of the document. (*Id.* at p. 974.) In addition, there was a clause in the contract incorporating a sliding scale of filing fees in order to arbitrate far in excess of court fees, which would have a "chilling effect upon the ambition . . . to pursue a claim. . . ." (*Ibid.*)

In marked contrast to *Spence,* the agreement in the present case was on a separate one-page document entitled "Physician-Patient Arbitration Agreement" and all wording provisions of section 1295 including the requirement of the 10-point red bold face type were followed. The arbitration agreement in issue also included a provision which allowed for revocation of the

agreement if made within 30 days of signing the agreement as required by section 1295, subdivision (c). Respondent did not take advantage of this provision, and in fact he continued receiving treatment from appellant for approximately nine months.

The agreement itself carried no buried terms; all terms were laid out very clearly in the arbitration agreement form. Further, the retroactive effect provision of the agreement was addressed in a distinct clause, and this was the only clause respondent was asked to initial, making it more obvious rather than less obvious or hidden.

In many cases of adhesion contracts, "the weaker party lacks not only the opportunity to bargain but also any realistic opportunity to look elsewhere for a more favorable contract; he must either adhere to the standardized agreement or forego the needed service." (*Madden, supra,* 17 Cal.3d at p. 711.) In *Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d 92, the hospital presented to all incoming patients a document entitled "Conditions of Admission" which provided that the patient release the hospital from liability for negligent or wrongful acts. (*Id.* at p. 102.) Incoming patients are often not in a position to bargain. Unlike *Tunkl,* there is no indication in the case before us that would suggest appellant was the only physician available to handle respondent's medical treatment. The agreement was also signed at a postsurgery visit to the doctor's office and not in an emergency room or immediate treatment situation. The fact that appellant was not the only physician available to treat respondent and the fact that he was not in an immediate treatment situation militates against a finding that respondent entered into the contract for lack of choice.

Most significantly, the present case does not limit appellant's liability in any way but merely provides for a different forum in which to settle disputes. In *Doyle* v. *Guiluicci* (1965) 62 Cal.2d 606 [43 Cal.Rptr. 697, 401 P.2d 1], the minor plaintiff's father had entered into a contract for medical and surgical services which included an arbitration clause. The court in *Doyle* stated, "The arbitration provision in such contracts is a reasonable restriction, for it does no more than specify a forum for the settlement of disputes." (*Id.* at p. 610.)

In *Graham, supra,* 28 Cal.3d at page 828, the court held that an arbitration agreement which designated the union of one of the parties to the contract as the arbitrator of all disputes arising thereunder did not meet the "minimum levels of integrity" which must be demanded of a contractually structured substitute for judicial proceedings. (*Ibid.*) In contrast, the arbitration agreement at issue calls for each party to select an arbitrator as well as a third

arbitrator to be selected by the arbitrators appointed by the parties. As such, the arbitration provision gives both parties an equal voice.

None of the above mentioned factors concerning the present case can be construed as unconscionable or oppressive, and each provision would seem to fall within the reasonable expectations of both parties. As such, the agreement cannot be construed as a contract of adhesion.

*Respondent's Signing of Arbitration Agreement Is Not Invalid*

In support of its finding that this was a contract of adhesion, the trial court found that the relative bargaining position of the parties at the time the purported agreement was entered into was grossly unequal, and that this inequality was attributable to the respondent's medicated state. The only evidence in the record as to respondent's medicated state comes from the respondent's declaration in which he stated that he took Vicodin several times a day for about nine weeks following his release from the hospital, and that the Vicodin, like the Demerol which he had had in the hospital, made him feel "very sleepy and somewhat disoriented." There is nothing in the record as to the effect of the pain medication on the respondent other than his own statement. Respondent does not claim that he could not read, or even that he did not understand the agreement, and there is no indication in the record that respondent was not able to comprehend what he was signing.

Most importantly, there is also no indication in the record that appellant knew respondent was disoriented, and no indication that appellant took advantage of the situation. Respondent makes no claim that appellant was aware respondent was disoriented. They point to no specifics to verify that appellant took advantage of respondent. In *Yeng Sue Chow* v. *Levi Strauss & Co.*, *supra*, 49 Cal.App.3d at page 325, the court stated, "It is blackletter law that whether a contract is fair or works unconscionable hardship is determined with reference to the time when the contract was made and cannot be resolved by hindsight by considering circumstances of which the contracting parties were unaware." Since there is no indication that appellant knew of respondent's claim of being "very sleepy and somewhat disoriented," it cannot be said that appellant took advantage of respondent by having him sign the arbitration agreement. The typical medical arbitration agreement covers subsequent medical treatment, without any knowledge of what may happen in the future. The agreement at issue was signed following initial treatment with the knowledge on the part of respondent that diagnosis of a fracture had been missed.

As stated in *Madden*, *supra*, 17 Cal.3d at page 710, "[t]he concept that a contract of adhesion should be interpreted and enforced differently from an

ordinary contract has evolved from cases which have involved contractual provisions drafted and imposed by a party enjoying superior bargaining strength—provisions which unexpectedly and often unconscionably limit the obligations and liability of the party drafting the contract." In the present case, the fact that there was no lack of choice as to medical services, no limitation of liability as to the appellant, no unclear terminology or hidden clause in the arbitration agreement form, no unconscionable or oppressive terms, all lead to the conclusion that the reasonable expectations of the parties were not frustrated. Therefore, the contract fails to qualify as a contract of adhesion.

If the arbitration agreement in the present case is not a contract of adhesion, "Ordinarily when a person with capacity of reading and understanding an instrument signs it, he may not, in the absence of fraud, imposition or excusable neglect, avoid its terms on the ground he failed to read it before signing it." (*Bauer* v. *Jackson* (1971) 15 Cal.App.3d 358, 370 [93 Cal.Rptr. 43].) However, the basis of the superior court ruling was not founded on fraud, imposition, or excusable neglect, but rather unequal bargaining positions. We find no basis for the superior court's finding of a contract of adhesion due to grossly unequal bargaining positions.

The denial of submitted order to compel arbitration is reversed. Costs to appellant.

Buckley, J., and Brown (G. A.), J.,* concurred.

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.