Filed 1/28/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM S. COBB, JR., et al., | |
| Plaintiffs and Respondents, | G050446 |
| v. | (Super. Ct. No. INC1205888) |
| IRONWOOD COUNTRY CLUB, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Riverside County, Harold W. Hopp, Judge. Affirmed. Request for Judicial Notice denied.

Slovak Baron Empey Murphy & Pinkney, Thomas S. Slovak and Charles L. Gallagher for Plaintiffs and Respondents.

Arbogast and Bowen and David M. Arbogast for Consumer Attorneys of California as Amici Curiae on behalf of Plaintiffs and Respondents.

Green, Bryant & French and Matthew T. Poelstra; Boudreau Williams and Jon R. Williams for Defendant and Appellant.

Robert L. Bouchier for California State Club Association as Amici Curiae on behalf of Defendant and Appellant.

Ironwood Country Club (Ironwood or the Club) appeals from an order denying its motion to compel arbitration of the declaratory relief action brought by plaintiffs William S. Cobb, Jr., and Elizabeth Richards, who are former members of Ironwood, and Patrick J. Keeley and Helen Riedstra, who are current members. The motion to compel was based on an arbitration provision Ironwood incorporated into its bylaws *four months after* plaintiffs' complaint was filed. Ironwood argues (1) that its new arbitration provision was fully applicable to this previously filed lawsuit because the lawsuit concerned a dispute which was "ongoing" between the parties, and (2) that its right to amend its bylaws meant that any such amendment would be binding on both current *and former* members.

The trial court disagreed, reasoning that Ironwood's subsequent amendment of its bylaws was insufficient to demonstrate that any of these plaintiffs agreed to arbitrate *this dispute*, and that if Ironwood's basic premise were accepted, it would render the agreement illusory. We agree with both conclusions and affirm the order.

When one party to a contract retains the unilateral right to amend the agreement governing the parties' relationship, its exercise of that right is constrained by the covenant of good faith and fair dealing which precludes amendments that operate retroactively to impair accrued rights. Plaintiffs certainly did not *agree* to any such illegal impairment in this case.

And Ironwood's basic premise, which is that each member's agreement to the bylaw provision allowing for future amendments to its bylaws means those members are automatically bound by *whatever* amendments the Club makes in accordance with that provision – even after the members have resigned their membership – would doom the agreement as illusory if it were correct. Fortunately, it is not.

FACTS

Plaintiffs' complaint, filed in August 2012, alleges that two of the plaintiffs are current members of Ironwood, and two are former members. In 1999, the Club entered into an agreement with each of its 588 members, whereby each member loaned the club $25,500 to fund the Club's purchase of additional land. The members were given the option of paying the funds in a lump sum or by making payments over a period of 20 years into a "Land Purchase Account." In connection with the loans, the Club represented that if any member sold his or her membership before the loan was repaid, the Club would be "absolutely obligated to pay the Selling Member the entire amount then standing in the Member's Land Purchase Account." Moreover, any new member would be required to pay, in addition to the regular initiation fee, an amount equal to the hypothetical balance in a Land Purchase Account, as well as the "remaining unamortized portion of the Land Purchase Assessment." (Original italics omitted.)

In reliance on the Club's representations, the members voted to approve the land purchase and enter into the loan agreements. Three of the plaintiffs paid the lump sum, and one plaintiff elected to make monthly payments into a Land Purchase Account. The Club consistently reported these payments in financial disclosures as a liability owed to each member, payable upon "sale of a member's certificate" to a new member. (Original italics omitted.) In April 2012, Ironwood represented that it had repaid the $25,500 Land Purchase Assessment to 10 resigned members whose memberships were subsequently purchased by new members, since 2003.

However, plaintiffs alleged that despite the Club's initial description of how the funds would be generated to reimburse resigning members, it "inexplicably failed" to require new members to pay the equivalent of the Land Purchase Assessment when they joined.

3

More significantly, in January 2012, Ironwood announced that "[a]fter substantial due diligence, [it had] concluded that the practice of repaying the Land Assessment to forfeiting members . . . must cease effective immediately." (Orignal italics omitted.) Thereafter, Ironwood made various conflicting and confusing statements and unilaterally imposed new rules to justify writing off its previously acknowledged liability to the members.

Based on those described facts, plaintiffs alleged that an actual controversy has arisen between themselves and Ironwood, with respect to the Club's obligation to repay the Land Purchase Assessment to each plaintiff.

When plaintiffs filed their complaint, Ironwood's bylaws contained no arbitration provision. However, four months later, in December 2012, the Club's board of directors notified the membership that it was contemplating amendments to the bylaws, including the adoption of a bylaw mandating arbitration of "any claim, grievance, demand, cause of action, or dispute of any kind whatsoever . . . of or by a Member past or present . . . arising out of, in connection with, or in relation to Club Membership, Club property, Club financial obligations of whatever nature, Club equipment, and/or Club and/or Member's activity, and involving the Club and/or the Club's officers, directors or agents. . . ." When it did not receive a sufficient number of objections from members in response to these proposed amendments, Ironwood's board adopted the arbitration provision into its bylaws effective December 28, 2012.

In January 2013, Ironwood filed a motion to compel plaintiffs to arbitrate their claim against it, based on Ironwood's "recent bylaw amendment." The Club asserted, without analysis, that because the plaintiffs each agreed to abide by its bylaws when they became members, including a provision which allowed those bylaws to be amended, they were automatically deemed to have "accepted and agreed to" the arbitration amendment subsequently adopted. Plaintiffs opposed the motion, arguing (1) Ironwood's amendment of its bylaws did not comply with either legal requirements for

4

corporate voting or the bylaw's own requirements, (2) Ironwood's amendment of its bylaws did not establish their agreement to arbitrate this dispute, (3) the provision was unconscionable, and (4) Ironwood had waived any right to arbitrate by using the court process to litigate plaintiff's claim.

The trial court denied the motion to compel arbitration, concluding that Ironwood's motion represented an improper effort to apply its new arbitration bylaw retroactively to a pending case. The court reasoned that Ironwood's subsequent amendment of its bylaws did not reflect any agreement by these plaintiffs to arbitrate this already pending dispute. And because arbitration is a matter of agreement, and no party can be compelled to a dispute he has not agreed to submit. The court also pointed out that "[t]aken to its logical extreme, [Ironwood's] argument would allow for an ever shifting playing field. Indeed, [Ironwood] could arguably amend and require arbitration years into a lawsuit, or amend to make conduct that was wrongful when an action was filed allowable."

DISCUSSION

On appeal, Ironwood makes three points. Its primary contention is that by accepting membership in the Club, plaintiffs agreed to be bound by its bylaws – including the provision for future amendments – and thus they "[n]ecessarily [a]greed" to its subsequent bylaw amendment requiring arbitration of disputes. Ironwood also disputes the idea that its application of the arbitration provision to this dispute qualifies as "retroactive," because in Ironwood's view, the dispute is "ongoing." And third, it claims the trial court's ruling contravenes the public policy which requires that any doubt as to whether an arbitration agreement governs a particular dispute must be resolved in favor of ordering arbitration. None of these points has merit.

5

*1. Ironwood's Power to Amend*

Ironwood asserts that its bylaws constitute a contract between the Club and each of its members. (See *King v. Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 357.) We agree. However, the Club further contends that because the bylaws include a provision allowing it to amend them, the members – even *former* members – are deemed to have agreed to *whatever* amendments are made in accordance with that provision. We cannot agree with that further contention.

Indeed, the contract Ironwood describes would qualify as illusory, and be unenforceable. "[W]hen a party to a contract retains the unfettered right to terminate or modify the agreement, the contract is deemed to be illusory." (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 15.) On the other hand, while "an unqualified right to modify or terminate the contract is not enforceable[,] the fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice." (*Id.* at p. 16.)

And under California law, one very significant restriction on what might otherwise be a party's unfettered power to amend or terminate the agreement governing the parties' relationship is the implied covenant of good faith and fair dealing. (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 885.) The covenant operates "'as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.'" (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031-1032.) "The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 372.)

6

With respect to arbitration provisions specifically, this court has already held that the implied covenant of good faith and fair dealing prohibits a party from "mak[ing] unilateral changes to an arbitration agreement that apply retroactively to 'accrued or known' claims because doing so would unreasonably interfere with the [opposing party's] expectations regarding how the agreement applied to those claims." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 61.) In reaching this conclusion, we join other courts. (See *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1474 ["The implied covenant also prevents an employer from modifying an arbitration agreement once a claim has accrued or become known to it"]; *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1465 ["A unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims"].)

Thus, to the extent Ironwood intended to enact an arbitration bylaw which would govern *this dispute* – a dispute which had not only accrued, but was already being litigated in court by the time the arbitration bylaw became effective – it violated the covenant of good faith and fair dealing implied into the bylaws, and thus exceeded the proper scope of its amendment power. Consequently, there is no basis to infer that plaintiffs *agreed in advance* to be bound by such an attempt.

*2. Retroactivity*

Even if it were otherwise theoretically proper for a party to unilaterally impose an arbitration provision which applied to claims which had already accrued, there is an additional problem with Ironwood's claim that its bylaw amendment reflected an agreement to arbitrate *this dispute*: i.e., there is nothing in the language of either the bylaws generally, or this specific amendment, which states it is *intended* to have such a retroactive effect. (Compare *Peleg v. Neiman Marcus Group, Inc. supra,* 204

7

Cal.App.4th at pp. 1432-1433 [in which the disputed provision actually stated it would apply to all *unfiled* claims, even those which had already accrued].)

The Club addresses this additional problem by denying that application of this arbitration provision to the instant case would qualify as retroactive. In the Club's view, because plaintiffs have alleged their claim for declaratory relief reflects an "ongoing" dispute concerning the parties' rights duties and obligations under the loan agreements, it is distinguishable from the type of dispute that is "based upon some incident which occurred at some finite period of time in the past." This distinction is specious.

All pending lawsuits – even those which are based on a specific past incident – reflect *ongoing* disputes. That is the very nature of a lawsuit. Until a lawsuit is resolved by settlement or judgment, or becomes moot, it necessarily reflects an ongoing dispute. Application of the arbitration bylaw to this case would qualify as retroactive because it would affect plaintiffs' already accrued legal claims, as well as their already accrued rights to seek redress for those claims in court. (See *Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 528-529 [proposition applies retroactively if it affects causes of action that accrued prior to its effective date].)

The Club also points out that even if this court were to construe this declaratory relief action as what it chooses to call a "'pre-agreement dispute,'" "the law does not otherwise forbid the arbitration of such a dispute." We might agree with that point, as far as it goes, but the problem for Ironwood is that it doesn't go very far. *Coon v. Nicola* (1993) 17 Cal.App.4th 1225 (*Coon*), the case the Club relies on, provides no support for retroactive application of an arbitration provision in the context of this case.

In *Coon*, the plaintiff was treated by the defendant physician for injuries suffered in a mining accident. Several days later, the plaintiff visited the doctor in his office and signed an arbitration agreement. The agreement provided for arbitration of all claims arising out of "prospective care," but also included an optional provision

8

governing "'[r]etroactive [e]ffect.'" (*Coon, supra*, 17 Cal.App.4th at p. 1230.) That provision stated: "'If patient intends this agreement to cover services rendered before the date it is signed (for example, emergency treatment) patient should initial below: Effective as of date of first medical services.'" (*Ibid.*) The *Coon* court noted "[i]t is not disputed that respondent signed the agreement and separately initialed the clause *expressly agreeing to arbitrate disputes stemming from the care appellant rendered prior to the office visit*." (*Ibid.*, italics added.)

Thus, *Coon* provides no authority for enforcing a unilaterally imposed retroactive arbitration agreement on a party *who has not expressly consented* to that retroactive application – which is what Ironwood is attempting to do here. Consequently, it offers no support for Ironwood's position. Moreover, in the course of rejecting plaintiff's contention that the retroactive agreement would be unenforceable *even though* he had expressly agreed to it, the *Coon* court makes a point that affirmatively harms Ironwood's effort to enforce its new bylaw here: the court states that "[m]ost significantly, the present case *does not limit appellant's liability in any way* but merely provides for a different forum in which to settle disputes." (*Coon, supra*, 17 Cal.App.4th at p. 1237, italics added.) On this point as well, the *Coon* case is distinguishable from ours. The bylaw at issue before us, which Ironwood is attempting to apply retroactively, *also* purports to limit Ironwood's liability, in that it additionally mandates a "waive[r of ] all claims, rights and demands for punitive and consequential damages." *Coon* provides no support for retroactive application of such a provision.

*3. Public Policy*

Ironwood also relies on the strong public policy favoring arbitration provisions as the basis for asserting that any "'[d]oubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration.'" (*Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186, 1189.)

9

However, that presumption is of no assistance to Ironwood here, because it is also true that "[a]rbitration is consensual in nature" (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 244) and "'[t]he right to arbitration depends on a contract'" between the parties. (*Id.* at p. 245.) Thus, "'the policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate.'" (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 739.)

And as we have already pointed out, Ironwood's unilateral amendment of its bylaws, to add an arbitration requirement which purports to retroactively compel plaintiffs to arbitrate a dispute which is already pending in court, does not create a legally enforceable agreement to arbitrate that dispute. Stated simply, this case does not present any "doubt" as to whether Ironwood's new arbitration bylaw might apply to this case.

Finally, we note that Ironwood's fervent commitment to the arbitration of any claims its members might choose to file against it, stands in marked contrast to its apparent unwillingness to commit *its own claims* to the same system. The arbitration bylaw the Club seeks to enforce here applies only to "any claim, grievance, demand, [etc.,] *of or by a Member past or present,* [etc.]" (Italics added.) These disputes brought by members are to be arbitrated before a "mutually agreed to retired Superior Court Judge." By its terms, then, the provision does not extend to any claims brought by the Club itself. And if that omission were not clear enough, the bylaw goes on to specify that "[t]his arbitration provision shall not apply to any dispute arising out of the Club's decision to impose any disciplinary action upon Members as set forth in these Bylaws." And while the bylaw also provides for arbitration of "claims by the Club against a Member for the payment of dues, assessments, fees and/or use charges," *those* arbitrations are required "to be administered by a judicial arbitration company or service in Riverside County *that is selected by the Club*."

Such a one-sided provision, especially when coupled with the purported waiver of any award of "punitive or consequential damages," could be deemed

10

unconscionable.  (*Armendariz v. v. Foundation Health Psychcare Services, Inc.* (2000) 24  Cal.4th 83, 118 ["the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself"].)

DISPOSITION

The order is affirmed.  Respondents' request for judicial notice of documents which were lodged, but not filed, in the trial court is denied.  Respondents are to recover their costs on appeal.

**CERTIFIED FOR PUBLICATION**

RYLAARSDAM, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

11