Filed 11/30/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| STATE FARM GENERAL INSURANCE COMPANY, | B271236 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC576644) |
| v. | |
| WATTS REGULATOR CO., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Ramona G. See, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Karl R. Loureiro and William E. Pallares for Defendant and Appellant.

Grotefeld, Hoffmann, Schleiter, Gordon, Ochoa & Evinger, Todd C. Harshman; Grotefeld Hoffman and Daniel Berglund for Plaintiff and Respondent.

_____

## SUMMARY

A nonprofit organization (Arbitration Forums, Inc. or AF) provides arbitration services for insurers and self-insured companies who become members of AF by signing its "Property Subrogation Arbitration Agreement" (the AF arbitration agreement). Plaintiff State Farm General Insurance Company and defendant Watts Regulator Company are members of AF that signed the AF arbitration agreement many years ago. After notice to its members in November 2014, AF changed the AF arbitration agreement, effective January 1, 2015, to exclude product liability claims from the kinds of claims subject to compulsory arbitration under the agreement.

A few months later, plaintiff filed this lawsuit, alleging subrogated product liability claims against defendant arising from a loss that occurred in November 2012. Defendant filed a motion to compel arbitration, contending it had a vested right, under the AF arbitration agreement in effect before January 1, 2015, to compulsory arbitration of the claim.

We find no basis for any vested right to arbitration under the circumstances of this case, where the parties have agreed to be bound by contractual terms and rules determined by a third party. We therefore affirm the trial court's denial of defendant's motion to compel arbitration.

## FACTS

Plaintiff and defendant became signatories to the AF arbitration agreement, independently of each other, some years before November 28, 2012, when a water loss damaged the home of one of plaintiff's insureds. The damage is alleged to have been caused by a defect in a supply line manufactured by defendant.

2

**The original AF arbitration agreement**

At the time of the November 2012 water damage, the relevant provisions of the AF arbitration agreement were these:

Article First (headed "Compulsory Provisions") stated: "Signatory companies must forego litigation and submit any personal, commercial, or self-insured property subrogation claims to Arbitration Forums, Inc."

Article Second contained eight exclusions from the compulsory arbitration requirement. When plaintiff and defendant became signatories, and at the time of the loss in November 2012, none of the eight listed exclusions applied to the claim at issue in this case.

Article Fifth described "AF's Function and Authority." Among other matters, it stated that: "AF, representing the signatory companies, is authorized to: [¶] (a) make appropriate Rules and Regulations for the presentation and determination of controversies under this Agreement . . . ." AF was also authorized to "(e) invite other insurance carriers, noninsurers, or self-insureds to participate in this arbitration program, and compel the withdrawal of any signatory for failure to conform to the Agreement or the Rules issued thereunder."

Article Sixth governed withdrawals from the agreement. It provided: "Any signatory company may withdraw from this Agreement by notice in writing to AF. Such withdrawal will become effective sixty (60) days after receipt of such notice except as to cases then pending before arbitration panels. The effective date of withdrawal as to such pending cases shall be upon final compliance with the finding of the arbitration panel on those cases."

**The revised AF arbitration agreement**

In November 2014, AF issued an e-bulletin, advising its members that, effective January 1, 2015, AF would change its Property Subrogation Arbitration Agreement to exclude product liability claims from compulsory arbitration. Effective January 1, 2015, the change was: "No company shall be required, without its written consent, to arbitrate any claim or suit if: (i) it is a product liability claim arising from an alleged defective product."

The November 2014 e-bulletin further advised members that, while arbitration of product liability claims would no longer be compulsory as of January 1, 2015, "cases filed prior to January 1, 2015, will remain in arbitration's jurisdiction and will be processed to hearing. [¶] Parties may still consent to use the Property Program to resolve product liability claims on a per-case basis on and after January 1, 2015."

Neither plaintiff nor defendant withdrew from the AF arbitration agreement.

On March 26, 2015, plaintiff filed a complaint in the superior court against defendant seeking subrogation for plaintiff's payments to its insured in connection with the November 28, 2012, water damage to his home. The complaint alleged causes of action for negligence, strict products liability and breach of implied warranties. Plaintiff did not submit these claims to AF for arbitration at any time before suit was filed.

On July 22, 2015, defendant filed a motion to compel arbitration, asserting that plaintiff's claims were, at the time the claims arose, subject to the AF arbitration agreement that each of them had signed.

4

In its opposition to the motion, plaintiff, citing AF's changes to the AF arbitration agreement effective January 1, 2015, contended that arbitration was no longer compulsory.

Defendant's reply to plaintiff's opposition argued that, when the claim at issue arose in November 2012, plaintiff and defendant were parties to a binding contract mandating that the claim be arbitrated, so defendant had a "previously-vested right [to arbitration] unless the parties specifically intended to retroactively terminate their rights." Thus, defendant contended, "the present arbitration agreement, as of January 1, 2015, has no bearing on whether this claim is arbitrable," and instead "the terms of the arbitration agreement applicable at the time the claim arose govern as to whether this matter is subject to arbitration." Further, defendant argued, AF is not a party to the AF arbitration agreement, "and its 'interpretation' of the agreement between [defendant] and Plaintiff carries no legal weight."

The trial court denied defendant's motion to compel arbitration. Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends, in substance, that once plaintiff and defendant had signed on to the AF arbitration agreement, AF could not "unilaterally" amend the terms of that agreement to exclude product liability claims that accrued before the effective date of the amendment. As will appear, we find no merit in this contention.

### 1. Legal Principles

The governing legal principles are well established. The policy underlying both the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) and the Federal Arbitration Act (9 U.S.C.

5

§ 1 et seq.) " 'is to ensure that arbitration agreements will be enforced *in accordance with their terms*.' " (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59 (*Avery*).) Arbitration is "a matter of contract" and the policy favoring arbitration does not displace the need for a voluntary agreement to arbitrate. (*Ibid.*) "Although the FAA preempts any state law that stands as an obstacle to its objective of enforcing arbitration agreements according to their terms, . . . we apply general California contract law to determine whether the parties formed a valid agreement to arbitrate their dispute[.]" (*Id.* at pp. 59-60, citation omitted.)

"Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning." (*Avery, supra,* 218 Cal.App.4th at p. 60.)

**2.    This Case**

We begin with several pertinent points.

First, this is not an ordinary arbitration agreement, where one party has contracted with another party to resolve disputes arising under their agreement in an arbitral forum rather than in court.  In this case, plaintiff and defendant have not contracted with each other directly.  Both of them, acting independently and along with many other insurers and self-insured companies, have signed an agreement prepared and promoted by the organization providing the arbitration services that are described in the agreement.

Second, AF places limits on the property subrogation disputes that are subject to compulsory arbitration.  These limits

6

appear in Arbitration Forums, Inc. Rules (the AF rules).[1]  Thus, for example, the AF rules provide that compulsory arbitration is applicable to a maximum claim amount of $100,000, and the AF rules limit jurisdiction to accidents or losses occurring in the United States, Puerto Rico and the U.S. Virgin Islands.  None of these limitations appears in the AF arbitration agreement – only in the AF rules.

Third, as already described, signatories to the AF arbitration agreement authorize AF to make those rules.  In Article Fifth, signatories agree that "AF, representing the signatory companies, is authorized to:  [¶]  (a) make appropriate Rules and Regulations for the presentation and determination of controversies under this Agreement[.]"  Defendant says this provision merely "allow[s] AF to make appropriate *procedural* rules" (italics added) and does not "allow[] AF to make rules regarding the provisions of the Arbitration Agreement itself[.]"  That is not the case, as demonstrated by the jurisdictional, monetary and geographical limitations that do *not* appear in the agreement, but *do* appear in the AF rules.  Those rules clearly operate to limit the scope of a signatory's agreement in Article First to submit "any" property subrogation claims to AF.  Thus it is plain that signatories are bound by both the AF arbitration agreement and the AF rules, neither of which contain any restriction on AF's authority to make changes.

---

[1]      The AF rules "are made and administered by [AF] under the authority of Article Fifth (a) of the various Arbitration Agreements."  The rules cover jurisdiction, procedure, hearings, decisions, awards, and administration.

All this leads us to conclude that neither of the parties had any power to determine the terms of the AF arbitration agreement; they could only decide, as they did, whether to assent to terms set by AF, and if they did not, they were free to withdraw. Nothing in the AF arbitration agreement or rules suggested that AF could not change those terms. And nothing in the AF arbitration agreement or rules suggested that AF could not specify the date on which and circumstances under which changes to the AF arbitration agreement would become effective.

Indeed, all indications are to the contrary. In addition to Article Fifth just discussed, Article Sixth, the withdrawal provision, plainly indicates that any signatory company could withdraw from the agreement "by notice in writing to AF" (not by notice to other members), effective 60 days after receipt of the notice. Moreover, the only exception to the 60-day withdrawal rule is for "cases then pending before arbitration panels," as to which withdrawal is not effective until final compliance with the finding of the arbitration panel. There is no exception for claims that have accrued but have not yet been filed with AF.

With these points in mind, we turn to defendant's contention that the law requires a different conclusion.

Defendant's principal argument is that it "never consented or agreed" to the "retroactive" application of the January 1, 2015 amendment to previously accrued claims. We reject the claim that retroactivity principles apply here. The notion of retroactivity presupposes that, before January 1, 2015, the date of accrual determined whether a product liability claim was subject to compulsory arbitration. Nothing in the AF arbitration agreement or AF rules so states, and the withdrawal provision is

8

inconsistent with an interpretation that the accrual date of a claim determines which arbitration agreement applies.[2]

Defendant's retroactivity claim relies on legal authorities to the effect that the "critical point in time," in determining whether an employer's modifications to an arbitration agreement apply to an employee's claims, "is when the claims accrued, not when the employee filed his or her judicial complaint." (*Avery, supra,* 218 Cal.App.4th at p. 62.) *Avery* explained that "[t]he implied covenant [of good faith and fair dealing] prevents [the employer] from applying [a new alternative dispute resolution process] to all claims that accrued before [the employer] issued the new handbook [containing the new process]." (*Ibid.*) That is, the implied covenant of good faith and fair dealing prevents one party to an arbitration agreement from unilaterally changing the arbitration process with respect to claims that had already accrued.

We agree with the *Avery* principle, but it has no application here. This is not a case where one party unilaterally changed its agreement with another party. It is a case where a third party, AF, set the terms of the agreement, and made a "unilateral" change, effective on a future date and with advance notice to the parties, both of whom were free to withdraw from the agreement

---

[2]     A portion of AF's "Reference Guide," dated 2009, explains the withdrawal provision and "how simple it is to withdraw from an arbitration program."  The reference guide states that: "A withdrawing company should not file for arbitration during this 60-day waiting period unless it is willing to have the panel hear the case.  All cases filed by or against the withdrawing member during the 60-day waiting period are still subject to the provisions of the program and the member must honor all awards."

yet neither of whom withdrew. The implied covenant of good faith and fair dealing is not implicated in this case. Defendant's repeated assertion of a "vested right" to arbitration of product liability claims that accrued before January 1, 2015, fails for the same reasons.

Taking a slightly different tack, defendant asserts that, "[a]t most," AF's decision not to offer compulsory arbitration of product liability claims after January 1, 2015, "meant that the original Arbitration Agreement would expire or be terminated as of that date." From this premise, defendant concludes plaintiff "would still be required to arbitrate claims that arose and accrued" while the original agreement was in effect. For this (erroneous) conclusion, defendant relies, for example, on *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO* (1977) 430 U.S. 243 (*Nolde Brothers*), where the court held that a union's claim for severance pay under an expired collective-bargaining agreement was "subject to resolution under the arbitration provisions of that contract." (*Id.* at p. 255; see also *John Wiley & Sons, Inc. v. Livingston* (1964) 376 U.S. 543, 555 (*John Wiley*) [obligations of the parties under the arbitration clause of their collective bargaining agreement survived contract termination when the dispute was over an obligation arguably created by the expired agreement].)

Again, the cases defendant cites are utterly inapt, factually and legally. As the *John Wiley* court stated, "We see no reason why parties could not if they so chose agree to the accrual of rights during the term of an agreement and their realization after the agreement had expired." (*John Wiley, supra,* 376 U.S. at p. 555.) That is not what happened here. And, as the high court later explained, the *Nolde Brothers* principle applies "only

10

where a dispute has its real source in the contract." (*Litton Financial Printing Division v. NLRB* (1991) 501 U.S. 190, 205.)

This case does not have its source in a contract between the parties. It does not involve a collective bargaining agreement, or any other kind of agreement that has been negotiated between the parties to it and that provides for arbitration of disputes over obligations created by the expired contract. This is a subrogation claim arising from a loss suffered by plaintiff's insured – not a dispute arising out of a contractual relationship between plaintiff and defendant. At the risk of repetition, the AF arbitration agreement is an industry program offered by a third party that has determined the terms under which it will provide arbitration services to companies who agree to bind themselves to the terms set by the third party. There is no legal basis for applying rules governing retroactivity, vested rights, or accrual of claims under these circumstances.

Defendant next argues that plaintiff is "judicially estopped" from taking the position that the AF arbitration agreement in effect as of January 1, 2015, governs this case. Defendant relies on a one-page order compelling arbitration in a Tennessee case between plaintiff and defendant. In that case, both parties "consent[ed]" to a holding by the Tennessee court that the arbitration agreement in effect at the time the claim arose (January 20, 2013) "governs this claim."

Defendant does not enumerate the elements of judicial estoppel in its opening brief, and for good reason; the doctrine has no application here. " ' "Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." ' " (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986 (*Aguilar*).) The

11

goals of the doctrine " ' "are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies." ' " (*Ibid.*)  Judicial estoppel "is an equitable doctrine, and its application, even where all necessary elements are present, is discretionary." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422, italics omitted.)

There is no "unfair strategy" in consenting to arbitration in one case and not in another.  Nor did plaintiff "gain[] an advantage" by consenting to arbitration in one case and then "seek[] a second advantage" by not doing so in another.  (*Aguilar, supra,* 32 Cal.4th at p. 986.)  Moreover, there is no showing plaintiff has taken incompatible positions.  The one-page order defendant cites does not show the facts in the Tennessee matter, and plaintiff tells us that this was a claim it had previously filed with AF, *before* January 1, 2015, and then withdrew from arbitration after AF announced the forthcoming change in its rules.  (This also happened in a California case where plaintiff stipulated to arbitration with defendant; the stipulation in that case shows the facts to be as plaintiff states.)  In short, those cases involved different circumstances – where plaintiff initially submitted the claim to AF before January 1, 2015 – so defendant has not shown any inconsistency in plaintiff's position.  In any event, we cannot see why a party's consent or stipulation to arbitration in one case should estop it from taking a different position in a different matter.  The gravamen of judicial estoppel " 'is the intentional assertion of an inconsistent position that perverts the judicial machinery.' " (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.)  Nothing of the sort happened here.

Defendant also contends that an interpretation of the AF arbitration agreement allowing AF "to change unilaterally the arbitration agreement" renders the agreement "illusory." This is so, defendant tells us, because only the insurer (plaintiff) can submit claims for arbitration (and, if we understand defendant's point correctly, plaintiff could choose not to submit accrued product liability claims after AF announced the exclusion of those claims in November 2014). That is so, but we fail to see how this means "there was never any mutual obligation to perform."

Defendant's argument again presupposes there is merit to its repeated assertion that the accrual date of a claim is pertinent, an assertion we have rejected. Moreover, neither party has withdrawn from the AF arbitration agreement as amended. There was, and still is, until either party withdraws, an obligation to arbitrate property subrogation claims not involving products liability, in accordance with the rules and other exclusions set by AF. The fact that product liability claims are no longer subject to compulsory arbitration does not make the agreement illusory. And perhaps even more to the point, "[a] contract is unenforceable as illusory *when one of the parties* has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder." (*Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 385, italics added.) This is not such as case.

Next, in its reply brief defendant tells us we cannot rely on the November 2014 e-bulletin (announcing the new product liability exclusion) to construe the amended AF arbitration agreement, because the e-bulletin is "extrinsic evidence." (As mentioned earlier, the e-bulletin tells members that, while "use of the Property Program to resolve disputes involving product

13

liability claims . . . will no longer be compulsory as of January 1, 2015, cases filed prior to January 1, 2015, will remain in arbitration's jurisdiction and will be processed to hearing.")

We are aware of no principle preventing the consideration of extrinsic evidence to determine the meaning of an agreement. Indeed, the case defendant relies on refers to a different point. (See *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 114 [observing that a court "cannot determine based on only the four corners of a document, without provisionally considering any extrinsic evidence offered by the parties, that the meaning of the document is clear and unambiguous"].)

Finally, defendant asserts that if an agreement is capable of two different reasonable interpretations, it is ambiguous, and the ambiguity is to be resolved in favor of arbitration. That is so, but again, this is not such a case. Here, the parties agreed to arbitration under terms and rules set by a third party, AF, whose intent to cease requiring and providing compulsory arbitration of product liability claims as of January 1, 2015, is clear. There was no error in the trial court's denial of defendant's motion to compel arbitration.

## DISPOSITION

The order denying defendant's motion to compel arbitration is affirmed. Plaintiff shall recover its costs on appeal.

GRIMES, J.

WE CONCUR:

RUBIN, Acting P. J.        FLIER, J.

14