Filed 8/14/19; Certified for Publication 8/27/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VICTOR M. QUIROZ FRANCO, | |
| Plaintiff and Respondent, | G056559 |
| v. | (Super. Ct. No. 30-2018-00980426) |
| GREYSTONE RIDGE CONDOMINIUM et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, David R. Chaffee, Judge.  Reversed.

Scott & Whitehead and Nancy Rader Whitehead for Defendants and Appellants.

The Kristy Law Firm and James R. Kristy for Plaintiff and Respondent.

\*          \*          \*

INTRODUCTION

In March 2018, employees of defendant Greystone Ridge Condominium (Greystone), including plaintiff Victor M. Quiroz Franco (plaintiff), were presented with and asked to sign an agreement requiring that each employee agree to submit to final and binding arbitration "[a]ny and all claims . . . relating to any aspect of . . . employment with Employer (pre-hire through post-termination)." About 10 days later, plaintiff filed a complaint against Greystone, C & A Services, John Stokke, and Maher A.A. Azer (defendants) asserting employment-related claims. Two days after that, plaintiff signed the arbitration agreement and returned it to Greystone. Defendants filed a motion to compel arbitration of plaintiff's claims which plaintiff opposed on the ground the arbitration agreement failed to expressly state that claims that had already accrued, including the claims asserted in plaintiff's complaint, were subject to arbitration. The trial court agreed with plaintiff and denied the motion to compel arbitration.

We reverse. The parties' arbitration agreement is clear, explicit, and unequivocal with regard to the claims subject to it and contains no qualifying language limiting its applicability to claims that had yet to accrue. On the contrary, the agreement's reference to claims relating to "pre-hire" matters expresses an intent to cover all claims, regardless of when they accrued, that are not otherwise expressly excluded by the arbitration agreement.

BACKGROUND[1]

Greystone is in the business of providing property management services for C & A Services. Plaintiff has worked for Greystone or its predecessor since 2000 at an

---

[1] The facts contained in this Background section are taken from the declaration of Greystone's vice-president John Stokke filed in support of defendants' motion to compel arbitration in this case. No other percipient witness declarations were filed either in support of or in opposition to the motion.

2

apartment complex Greystone manages in Anaheim.  In early March 2018, Greystone's vice-president John Stokke was in the process of distributing arbitration agreements to all of Greystone's employees.  On March 9, 2018, Stokke gave plaintiff a document entitled "Agreement to Arbitrate All Covered Claims" (the Agreement).

The Agreement states in relevant part:  "1. <u>Final and Binding Arbitration</u>: Any and all claims, controversies or disputes ("Disputes") relating to any aspect of Employee's employment with Employer (pre-hire through post-termination), which Employer may have against Employee, or which Employee may have against Employer or any related entity, owner, partner, officer, director, shareholder, employee, contractor, representative or agent, shall be resolved through final and binding arbitration.  Employer and Employee acknowledge that Employer and Employee are relinquishing the right to a court trial or jury trial of any Dispute, except as otherwise provided by law or this Agreement.  The Parties intend that this Agreement be enforced under the provisions of the Federal Arbitration Act to the fullest extent permitted by law.

"2. <u>Covered Claims</u>:  Disputes that are subject to this Agreement include, but are not limited to, those arising under:  (a) the federal or California Constitution; (b) any federal, state or local statute, regulation, ordinance or order (including the California Industrial Welfare Commission Wage Orders); (c) this Agreement, or the enforceability of this Agreement, in whole or in part; (d) the California Private Attorneys General Act if, and to the extent, permissible by law; and (e) case law/common law (collectively, "Covered Claims"), except as otherwise preluded by law or by this Agreement.

"3. <u>Excluded Claims</u>:  The following claims are not subject to this Agreement:  (1) claims properly brought before the Workers' Compensation Appeals Board; (2) claims for unemployment insurance benefits; (3) claims for damages that fall within the jurisdiction of Small Claims Court; (4) claims brought pursuant to the Ralph Civil Rights Act or the Bane Civil Rights Act; (5) claims that may not be waived by an

3

agreement to arbitrate as a matter of law, including claims that a federal or state agency may pursue via an enforcement action (although if Employee chooses to pursue a claim following the exhaustion of such administrative remedies, that claim would be subject to the provisions of this Arbitration Agreement); (6) actions properly brought pursuant to the National Labor Relations Act brought before the National Labor Relations Board; and (7) claims for injunctive and/or other equitable relief, including but not limited to orders sought pursuant to California Code of Civil Procedure Sections 527.6 and 527.8 to restrain threats of and/or any act of harassment or violence, or the Uniform Trade Secrets Act and related law to stop or prevent unfair competition and/or the misappropriate or illegal conduct related to trade secrets or Confidential Information. Any excludable action by Employer or by Employee shall be filed in the State of California, County of Orange. Employee shall not be subject to disciplinary or retaliatory action for engaging in protected, concerted activity, related to any portion of this Agreement, including this provision."

A few days after Stokke presented the Agreement to plaintiff, plaintiff asked Stokke to provide him with a Spanish translation of the Agreement; on March 16, 2018, Stokke did so. At that time, plaintiff told Stokke that he "had a meeting scheduled with a lawyer on March 19, 2018." Stokke and plaintiff did not discuss the nature of the meeting plaintiff had scheduled with a lawyer, but Stokke "assumed he would discuss the Arbitration Agreement with his counsel."

On March 19, 2018, plaintiff filed a complaint against defendants in which he asserted claims for (1) disparate treatment in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.); (2) hostile work environment in violation of FEHA; (3) failure to prevent discrimination, harassment, or retaliation in violation of FEHA; (4) failure to pay overtime compensation (Lab. Code, §§ 218.5, 510, & 1194); (5) failure to pay minimum wage (*id.*, §§ 218.5, 510 & 1194); (6) failure to provide accurate itemized wage statements (*id.*, § 226); (7) failure to indemnify employee

4

for business expenses (*id.*, § 2802); and (8) violation of Business and Professions Code section 17200 et seq.

On March 21, 2018, plaintiff personally handed to Stokke the Agreement which plaintiff had signed and dated "3/21/18." At that time, Stokke was unaware that plaintiff had filed the complaint. Plaintiff and Stokke did not discuss the substance of the Agreement and no threats were ever made to plaintiff if he chose not to sign it.

Defendants filed a motion to compel arbitration of plaintiff's claims on the ground plaintiff had signed the Agreement and thereby agreed to submit any claims arising from his employment to binding arbitration.

Plaintiff filed an opposition to the motion to compel arbitration in which he argued the claims in his complaint were not subject to the Agreement because plaintiff filed the complaint before he signed the Agreement. He argued it is "well-settled in California that legal claims embodied in a lawsuit which is filed before the Plaintiff signs an arbitration agreement cannot be subject to arbitration unless the agreement expressly covers a pre-existing lawsuit" and "Plaintiff filed a valid lawsuit in California Superior Court before signing an agreement to arbitrate."[2]

The trial court denied the motion to compel, stating its reasoning in a minute order as follows: "Defendants move to compel arbitration based on an arbitration agreement ('Agreement') executed by Plaintiff a few days after he had filed this action. [Citation.] However, the claims at issue had accrued before the Agreement was signed. (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 62 [the 'critical point in time is when the claims accrued'—i.e. when the conduct at issue occurred].) Defendants have not shown that Plaintiff had either *agreed in advance* to

---

[2] Plaintiff also argued his pending claims under the Labor Code Private Attorneys General Act of 2004 and his claim for injunctive relief under Business and Professions Code section 17200 et seq. were not subject to arbitration. He does not raise this argument on appeal and we therefore do not address it further.

5

arbitrate those claims, or that he gave *express consent* in the Agreement that it would have retroactive application. Arbitration thus cannot be compelled here. (See *Cobb v. Ironwood Country Club* (2015) 233 Cal.App.4th 960, 966-968, and *Avery v. Integrated Healthcare Holdings, Inc.* [2013] 218 Cal.App.4th [50], 61-62.)"

Plaintiff appealed. (Code of Civ. Proc., § 1294, subd. (a).)

DISCUSSION

I.

*Governing Legal Principles and Standard of Review*

"Both the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) and the FAA [Federal Arbitration Act] (9 U.S.C. § 1 et seq.) recognize ""'arbitration as a speedy and relatively inexpensive means of dispute resolution'" and are intended "'to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.'" [Citation.]' [Citations.] The fundamental policy underlying both acts 'is to ensure that arbitration agreements will be enforced *in accordance with their terms*.' [¶] Arbitration is therefore a matter of contract." (*Avery v. Integrated Healthcare Holdings, Inc., supra,* 218 Cal.App.4th at p. 59 (*Avery*).)

General contract law principles include that "[t]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] . . . 'The words of a contract are to be understood in their ordinary and popular sense.'" (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955.) Furthermore, "'[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' (Civ. Code, § 1641.)" (*Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164, 1170.)

6

"The "'"'"'. . . policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate.'" [Citation.] "Although '[t]he law favors contracts for arbitration of disputes between parties' [citation], '"there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ."' [Citations.]'" [Citation.] 'Absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived.'"'" (*Avery, supra,* 218 Cal.App.4th at p. 59.)

"'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]' [Citation.] Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning." (*Avery, supra,* 218 Cal.App.4th at p. 60.)

Here, because the parties offered no extrinsic evidence, we review the court's order denying the motion to compel arbitration under the de novo standard of review.

## II.
### *The Plain Language of the Arbitration Agreement Provides for the Arbitration of All Employment Claims, Including Those Contained in the Complaint.*

The issue presented is whether plaintiff's claims are subject to mandatory arbitration under the Agreement even though the complaint was filed before plaintiff signed the Agreement. Resolution of that issue is primarily based on the interpretation of the following provision of the Agreement: "*Any and all claims*, controversies or disputes ('Disputes') *relating to any aspect of Employee's employment with Employer (pre-hire through post-termination),* which Employer may have against Employee, or which

7

Employee may have against Employer or any related entity, owner, partner, officer, director, shareholder, employee, contractor, representative or agent, shall be resolved through final and binding arbitration." (Italics added.) Plaintiff argues that the Agreement cannot apply to claims that existed before he signed the Agreement unless the Agreement expressly so states. Defendants argue the Agreement should be interpreted to require arbitration of all claims relating to plaintiff's employment, including those claims that already existed at the time plaintiff signed the Agreement.

The appellate court in *Salgado v. Carrows Restaurants, Inc.* (2019) 33 Cal.App.5th 356 (*Salgado*), faced a similar issue of contractual interpretation. In *Salgado*, the plaintiff, who in 1984 began working for Carrows Restaurant, filed a lawsuit alleging claims for employment discrimination and violation of civil rights. (*Id.* at p. 358.) The following month, she signed an arbitration agreement, which the appellate court described as follows: "The arbitration agreement contained two relevant provisions. The first provision provided, 'The Company and I agree and acknowledge that we will utilize binding arbitration as the sole and exclusive means to resolve all disputes which may arise out of or be related in any way to my application for employment and/or employment, including but not limited to the termination of my employment and my compensation.' [¶] The second provision provided, in relevant part, 'Both the Company and I agree that any claim, dispute, and/or controversy that I may have against the Company . . . or the Company may have against me, shall be submitted to and determined exclusively by binding arbitration.'" (*Id.* at p. 359.)

The plaintiff thereafter amended the complaint to add the two respondent entities, referred to in the appellate court's opinion as "Carrows," as defendants in her lawsuit. (*Salgado, supra,* 33 Cal.App.5th at p. 358.) Several months after that, Carrows filed a motion to compel arbitration which the plaintiff opposed on the grounds her lawsuit had been filed before she signed the arbitration agreement, the arbitration agreement was "'not retroactive,'" and the arbitration agreement was procedurally and

8

substantively unconscionable. (*Id.* at p. 359.) The trial court denied the motion to compel arbitration on the ground Carrows "'failed to demonstrate that the arbitration agreement applies to a suit that was filed prior to its signature.'" (*Ibid.*)

The appellate court reversed. (*Salgado, supra,* 33 Cal.App.5th at p. 358.) With regard to the first provision of the arbitration agreement, the appellate court stated: "Carrows notes that the 'may arise' language is followed by the second phrase, '*or* be related in any way to my application for employment and/or employment.' (Italics added.) Carrows contends the 'use of the word "or" means the preceding terms "may arise" are not exclusive or controlling. So long as [Salgado's] employment dispute is the type of claim that is "related in any way to [her] employment," it falls within the terms of the Agreement.' [¶] Carrows's interpretation is reasonable. Salgado focuses only on one phrase in the arbitration agreement. But the word 'or' shows that there is an alternative. [Citation.] Each phrase must be considered. '"Courts must interpret contractual language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless."' [Citation.] The second phrase following 'or' broadly applies to 'all disputes' related 'in any way' to employment. This language is 'clear and explicit.' [Citation.] Salgado's current action is a dispute that falls within the meaning of this provision." (*Id.* at pp. 360-361.)

As to the second provision, the appellate court stated: "Carrows claims the trial court also failed to consider the second provision of the arbitration agreement. It provides: 'Both the Company and I agree that *any claim*, dispute, and/or controversy that I may have against the Company . . . or the Company may have against me, shall be submitted to and determined exclusively by binding arbitration . . . .' (Italics added.) [¶] This provision is broad in scope. [Citation.] Here the language is 'clear and explicit.' [Citation.] There is no language containing a limitation or restriction based on the age of the claim. [Citation.] There is no qualifying language. This provision unequivocally requires arbitration for 'any claim' Salgado has against Carrows. Salgado's current

9

lawsuit is such a claim. Her brief does not discuss this provision. Nor has she shown why this language does not apply to the current action." (*Salgado, supra,* 33 Cal.App.5th at p. 361.)[3]

Here, plaintiff agreed to submit to final and binding arbitration "[a]ny and all claims . . . relating to any aspect of Employee's employment with Employer (pre-hire through post-termination)."[4] As in *Salgado*, the language of the Agreement is clear and explicit; there is no language containing a limitation or restriction based on the age of covered claims; there is no qualifying language; and the language unequivocally requires arbitration for "[a]ny and all claims" plaintiff has against, inter alia, his employer, its agents, and related entities. Furthermore, the Agreement specifically refers to claims relating to any aspect of employment including those of a "pre-hire" variety, thereby reasonably supporting the interpretation that the Agreement applies to *all* claims, whether they had already accrued, or not, at the time the Agreement was executed.

In his appellate respondent's brief, plaintiff argues that already accrued claims at the time an arbitration agreement is executed are not subject to arbitration unless they are otherwise expressly referenced in that agreement. It is reasonable to interpret the Agreement's reference to "pre-hire" claims as such an express reference to require the arbitration of claims that accrued prior to execution of the Agreement. But even if that were not so, the *Salgado* court rejected the argument that claims that have accrued before an arbitration agreement is executed are generally excluded from arbitration, stating: "[T]he 'contention that an agreement to arbitrate a dispute must pre-date the actions giving rise to the dispute is misplaced. Such a suggestion runs contrary

---

[3] The appellate court in *Salgado, supra,* 33 Cal.App.5th at pages 362 to 363 remanded the matter to the trial court to determine whether the arbitration agreement in that case was unconscionable. Here, plaintiff has not challenged the Agreement on unconscionability grounds either in the trial court or on appeal.

[4] Plaintiff does not argue that any claim in the complaint fails to qualify as a covered claim as defined in the Agreement.

to contract principles which govern arbitration agreements.' [Citation.] '[A]n arbitration agreement may be applied retroactively to transactions which occurred prior to execution of the arbitration agreement.' (*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King* (M.D.Fla. 1992) 804 F.Supp. 1512, 1514; see *Shotto v. Laub* (D.Md. 1986) 632 F.Supp. 516, 522 ['whether plaintiffs signed the agreements before or after opening their accounts, or even before or after the claim arose, does not change the fact that they signed written agreements to arbitrate claims arising out of their account']; see also *Desert Outdoor Advertising v. Superior Court* [(2011)] 196 Cal.App.4th [866,] 877 [the broad language of the arbitration agreement applied to a dispute occurring before the signing of the arbitration agreement]; *In re Currency Conversion Fee Antitrust Litigation* (S.D.N.Y. 2003) 265 F.Supp.2d 385, 407 [the broad language—'"any dispute, claim, or controversy . . . arising out of or relating to this Agreement, your Account . . . "'— required arbitration for claims plaintiff had prior to agreeing to arbitration].)" (*Salgado, supra,* 33 Cal.App.5th at pp. 361-362.)

In his respondent's brief, plaintiff cites *Avery, supra,* 218 Cal.App.4th 50 and *Cobb v. Ironwood Country Club* (2015) 233 Cal.App.4th 960 (*Cobb*) in support of his argument the motion to compel arbitration was properly denied by the trial court. The cited cases, however, are distinguishable from the instant case.

In *Avery, supra,* 218 Cal.App.4th at page 55, a panel of this court affirmed the trial court's order denying motions to compel arbitration because the moving party failed to establish the plaintiff employees agreed to the specific arbitration agreement the employer submitted to the trial court. The court held: "Without sufficient evidence of the actual arbitration policy to which Plaintiffs agreed when they signed the acknowledgements and other documents, we may not enforce the policy against Plaintiffs." (*Ibid.*) The court's analysis of the retroactive application of an arbitration agreement to preexisting claims was in the context of the employer's attempt to enforce an arbitration agreement that it had unilaterally modified to apply to preexisting claims.

11

(*Id.* at p. 61.) The *Avery* court explained: "An arbitration agreement between an employer and an employee may reserve to the employer the unilateral right to modify the agreement. [Citation.] But the covenant of good faith and fair dealing implied in every contract requires the employer to exercise that right fairly and in good faith so as not to deprive the employee of his or her reasonable expectations under the agreement. [Citations.] Accordingly, an employer may not make unilateral changes to an arbitration agreement that apply retroactively to 'accrued or known' claims because doing so would unreasonably interfere with the employee's expectations regarding how the agreement applied to those claims. [Citation.] Similarly, the employer must give the employee reasonable notice regarding changes the employer makes so the employee is aware of his or her rights under the agreement. [Citation.] Both of these rules prevent [the employer] from applying the Alternative Dispute Resolution Process to Plaintiffs' claims." (*Ibid.*)

The *Avery* court cited *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1465 in which the appellate court held: "A unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the [implied] covenant [of good faith and fair dealing] so that changes do not apply to such claims. . . . If, however, a modification provision expressly addresses whether contract changes apply to claims that have accrued or are known to the employer, the covenant cannot create implied terms that contradict the express language. [Citations.] An arbitration agreement that expressly *exempts* all claims, accrued or known, from contract changes is valid and enforceable without resort to the covenant. If, on the other hand, an arbitration agreement expressly applies a contract change to such claims, the covenant cannot vary the plain language, and the agreement is illusory." *Avery* and *Peleg* show that *in the context of unilateral modification of an arbitration agreement*, the implied covenant of good faith and fair dealing requires an employer to provide reasonable and express notice to employees regarding the applicability of such modifications to already existing claims.

12

Plaintiff similarly cites *Cobb, supra,* 233 Cal.App.4th 960 for the proposition that "the parties' *express* consent to an arbitration agreement's retroactive effect is imperative." *Cobb*, like *Avery*, involved an issue of a retroactive application of an arbitration agreement to pre-existing claims by way of a unilateral modification of the parties' agreement. In *Cobb, supra,* 233 Cal.App.4th at page 963, a panel of this court held: "When one party to a contract retains the unilateral right to amend the agreement governing the parties' relationship, its exercise of that right is constrained by the covenant of good faith and fair dealing which precludes amendments that operate retroactively to impair accrued rights. Plaintiffs certainly did not *agree* to any such illegal impairment in this case."

The instant case does not involve a unilateral modification of an arbitration agreement. There is no dispute plaintiff agreed to the terms of the Agreement. He did not argue in the trial court and does not argue on appeal that the Agreement or any of its terms is unconscionable. In any event, as discussed *ante* and unlike *Avery* and *Cobb*, the Agreement contains language that refers to claims related to "pre-hire" issues and thus contains an express reference that the Agreement applies to claims existing before it was executed. *Avery* and *Cobb*, therefore, are distinguishable. (See *State Farm General Ins. Co. v. Watts Regulator Co.* (2017) 17 Cal.App.5th 1093, 1100 ["We agree with the *Avery* principle, but it has no application here. This is not a case where one party unilaterally changed its agreement with another party"].) The motion to compel arbitration should have been granted.

DISPOSITION

The order is reversed.  Appellants shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.

Filed 8/27/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VICTOR M. QUIROZ FRANCO, | |
| Plaintiff and Respondent, | G056559 |
| v. | (Super. Ct. No. 30-2018-00980426) |
| GREYSTONE RIDGE CONDOMINIUM et al., | ORDER GRANTING REQUEST FOR PUBLICATION |
| Defendants and Appellants. | |

       Appellants have requested that our opinion, filed August 14, 2019, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2), (3), (6), and (7). The request is GRANTED. The opinion is ordered published in the Official Reports.


                        FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.